CAROLINE CRONECKER, APPELLANT, v. CHARLES R. HALL, RESPONDENT.

Submitted July 8, 1918—Decided November 18, 1918.

Directed by his employer to take his automobile to Philadelphia for repairs from Egg Harbor, the employe took it back to Avalon from where he had taken it that day. He kept it there two days without the employer's knowledge, and while driving it in the country with two people, and while racing at a high rate of speed with another car, he collided with plaintiff's car which was trying to avoid him. *Held*, that having disobeyed his employer's instructions, and deviated from the business he was directed to pursue, his use of the car was his own use, and the relation of master and servant was thereby terminated. *Held*, *also*, that the direction of a verdict for the defendant was proper.

On appeal from the Supreme Court.

For the appellant, *Wescott & Weaver*.

For the respondent, *Howard L. Miller* and *Lawrence B. Reader*.

The opinion of the court was delivered by

MINTURN, J.   The question presented by the case is whether, under the circumstances, a verdict directed for the defendant at the circuit shall stand as the legally correct judgment.

In the sale of lots in the borough of Avalon, in Cape May county, the defendant found it advisable to use an automo-

bile, for the purpose of conveying prospective purchasers about the island. Brown was his chauffeur, and his duties were limited to driving the people who visited the place on such business about the island, which was connected with the main land by a bridge. The season at Avalon having terminated, the defendant went to Philadelphia to arrange for a trip to Florida. He instructed Brown, on a certain Friday, to bring the defendant's family to Philadelphia, in the automobile, and to leave the car at that city to prepare it for the southern trip. When the car reached Egg Harbor, Brown fancied that the machine was in some respect defective, and 'phoned to defendant at Philadelphia that he could proceed no farther. The defendant directed him to place the family on the next train to the latter city, and to bring the car there to be overhauled. Instead of obeying this direction *in toto,* Brown brought the machine on the same day back to Avalon, kept it there until Sunday, and on that day, without directions from anyone, used it for driving one Arader and a woman companion out of the island, a distance of four miles into the country. The unfortunate, yet distinctive incident of the trip was a race with another machine going at forty or forty-five miles an hour, and the resultant collision with plaintiff's machine, which was standing off the road purposely to avoid the approaching vehicles. So recklessly was the defendant's car driven, that the collision was inevitable. The plaintiff's car was wrecked, and she was rendered unconscious from the impact, and was precipitated with her family to the ground.

Arader was an itinerant real estate operator, who occasionally sold lots on the place, and obtained his commission for the specific work. In no sense was he in defendant's service to exercise authority over Brown or the machine. The woman in the case figures as a nondescript. If she were a prospective purchaser of lots, the testimony failed to disclose the fact. The defendant's only *alter ego* was one Weikheiser, but he gave no directions in this instance, and conceded no authority to Brown or Arader to leave the island with the car.

The situation then was this: A refractory chauffeur, de-
luding his employer miles distant, into the belief that his
car was unable to proceed to Philadelphia as ordered, but re-
tracing his course, taking the car back to Avalon, and on
the second day thereafter, driving the *pseudo* crippled ma-
chine, containing his two invitees into the country at a high
rate of speed, until the collision terminated both his drive
and his duplicity; for he thereafter escaped, and the efforts
of the parties have been unable to procure his presence at
the trial.

The action is based upon the legal doctrine of responsi-
bility, involved in the maxim *"Respondeat superior."* The
vicarious responsibility of a master is legally predicated, upon
the presumed or proven existence of the relationship of mas-
ter and servant. If the relationship cannot be shown to have
existed at the time of the occurrence of the damage com-
plained of, responsibility does not exist.

To determine its existence in this instance, inquiries as
to Brown's duties on the island, and the duties he was pre-
sumably performing in the estimation of others on this par-
ticular day, cannot supply us with the determining factor of
responsibility in the case. As we have intimated, there is no
testimony worthy of the designation, from which it can be
reasonably inferred that what Brown did on that day was
done in the scope or discharge of his master's business. But
*per contra* the uncontradicted fact permeates the entire case,
that when at Egg Harbor Brown refused to comply with his
master's orders, his subsequent misconduct to the moment of
the accident, was but a continuance of his status of willful
insubordination, upon which no implied contractual relation-
ship, binding upon the master, can be legally predicated.

The master's business and Brown's business on the day of
the accident undeniably was not at Avalon, but at Philadel-
phia; unless we are prepared to concede that the servant may
put the master's orders at defiance, and set up his own *ipse
dixit* and malevolent will, as the controlling factor in the
relationship.

This conspicuous fact presents the basis for the legal principle applicable, that from the moment Brown turned his machine to Avalon instead of to Philadelphia, he *ipso facto* occupied the status of a tort feasor, even as against the defendant. *Poll. Torts* 334.

This court has repeatedly, under variant circumstances, accepted and applied that doctrine. *Evers* v. *Krouse,* 70 *N. J. L.* 653; *Doran* v. *Thomsen,* 76 *Id.* 754; *Missell* v. *Hayes,* 86 *Id.* 348; *Jennings* v. *Okin,* 88 *Id.* 659.

In *Evers* v. *Krouse* (*supra*), the present Chief Justice, speaking for this court, and referring to the same principle enunciated in *Holler* v. *Ross,* 68 *N. J. L.* 324, says: "An act done by the servant while engaged in the work of his master, may be entirely disconnected therefrom, done not as a means or for the purpose of performing that work, but solely for the accomplishment of the independent malicious or mischievous purpose of the servant. Such an act is not, as a matter of fact, the act of the master in any sense, and should not be deemed so as a matter of law. As to it the relation of master and servant does not exist between the parties, and for the injury resulting to a third person from it, the servant alone should be held responsible."

In *Jennings* v. *Okin* (*supra*), we reiterated the doctrine, in a case where the son was directed by the father to use the automobile for a certain purpose, and deviating from his course to accommodate his friends, caused the damage in suit.

We there said that "From the moment it (the deviation) was undertaken, the relationship of principal and agent theretofore subsisting was severed." In none of the cases cited do we find the conspicuous and accentuating factor here presented; the calculating, preconceived, malevolent intent to disobey and to deceive the master, and practically to appropriate his property to the use of the tort feasor, thus effectuating a palpably elementary trespass, cognizable as such at common law and suable in trespass *de bonis asportatis.* 2 *Reeves Hist. Eng. Law* 566; 1 *Street's Found. Leg. Lia.* 229.

As well might the stranger, who with larcenous intent, appropriates a machine and does damage in its use, be classed

within the scope of the doctrine of *"Respondeat superior,"* as the recalcitrant employe in this instance.

The act of the latter is essentially, and in its consequences would be similar to the felonious taking; the intent of the actor alone would differentiate it. No claim is made based on the testimony that the defendant, by word or act, recognized this malfeasance, or was conscious of its perpetration, or had become actually or impliedly a party to it, so as to be bound by its disastrous consequences. On the contrary, the uncontradicted testimony evinces that he was deceived and misled, and unconscious of the fraud that was practiced upon him. In such a situation, no jury question can be reasonably evolved, unless we are prepared to concede as a rule of law, within the doctrine of *"Respondeat superior,"* that an indefensible appropriation of a master's property by a whilom servant, in the use of which he damages another, shall subject the master to liability as a vicarious sacrifice, for the all but felonious offender.

The judgment will be affirmed.

WALKER, CHANCELLOR (dissenting). In this case there was a direction of a verdict in favor of the defendant at the circuit. A motion to nonsuit at the close of the plaintiff's case was made, but was not argued or decided, and therefore is not before us.

In my judgment, the question presented at the close of the case was one of fact, and, therefore, under our decisions, it was for the jury and not for the court. That the question was a factual one I think sufficiently appears from the statements in the majority opinion, and it will, therefore, be unnecessary to review the facts.

The learned justice who wrote the opinion for this court says · that the vicarious responsibility of the master was legally predicated upon the presumed or proven existence of the relationship of master and servant, and if the relationship cannot be shown to have existed, responsibility does not exist. It is conceded that this is a correct statement of the

law, but that of itself does not decide the question as to whether the relationship was one of fact or of law. Again he says that there is no testimony worthy of the designation from which it can be reasonably inferred that what Brown did, on the day in question, was done in the scope of discharge of his master's business. This is a clear intimation that there was testimony, even though slight, from which the agency might have been inferred. He then goes on and says that the *uncontradicted fact* permeates the case that when at Egg Harbor Brown refused to comply with his master's orders. Here is a clear declaration, as I view it, that the question depended upon the fact, uncontradicted though it was. The learned justice further says that this conspicuous fact presents the basis for the legal principle applicable, that from the moment Brown turned his machine to Avalon instead of Philadelphia, he *ipso facto* occupied the status of a tort feasor, even as against the defendant. This may be conceded as a fact, but does not authorize the fact to be determined by the judge. He cites the following cases as supporting the proposition: *Evers* v. *Krouse, 70 N. J. L.* 653; *Doran* v. *Thomsen, 76 Id. 754; Missell* v. *Hayes, 86 Id.* 348; *Jennings* v. *Okin, 88 Id. 659.*

In my judgment, they do not apply. In *Evers* v. *Krouse* it was decided that the act done by a servant while engaged in the work of his master, but entirely disconnected therefrom and done solely for the accomplishment of a malicious or mischievous purpose of the servant, was not in any sense the act of the master. But it will be observed that this question was not decided by the court. The case was up on appeal from a verdict rendered by a jury, and the present Chief Justice, who wrote the opinion, observed that the only error assigned which required consideration, was directed at *the charge of the judge* to the jury in dealing with the question of the liability of the defendant.

In *Doran* v. *Thomsen* the case was submitted to the jury upon the theory that the daughter of the defendant, in driving his automobile, was his servant, and the judge instructed

the jury that unless they found that the daughter was such servant the defendant would not be liable, and this court said that the mere fact of the relation of parent and child would not make the child the servant of the defendant; and, further, that, assuming that the relation of master and servant existed generally between the father and daughter, yet it did not appear that on the occasion in question she was acting as such servant within the scope of her employment. This was a decision to the effect that, admitting all that the plaintiff had shown, no legal liability appeared to rest upon the defendant. In the case at bar the majority opinion does not uphold the direction of a verdict upon the theory that the plaintiff had not shown herself entitled to go to the jury, but that the testimony of the defendant disentitled the plaintiff, and that, because the defendant's testimony was uncontradicted.

In *Missell* v. *Hayes* the case was submitted to the jury. After stating the facts Judge White, speaking for this court, said that it was urged that those facts were insufficient to form a basis for a finding that the son was acting as the servant of the father and within the scope of his employment as such, and that, therefore, the motions for a nonsuit or direction of a verdict in the father's favor should have been allowed under the case of *Doran* v. *Thomsen*. The learned judge distinguished the Doran case by saying that there the defendant's daughter, whose negligent driving caused the accident, took her father's automobile out for her own pleasure and that of friends who accompanied her, no other members of the family being in the car; that the only element in that case tending to show that the daughter was acting as the servant of the father was *the bare fact that the father owned the automobile;* that in fact the automobile was in the possession of a third party (who happened to be the owner's daughter) who was using it for her own and her friends' pleasure, and not upon the owner's business. The view which I have just expressed, namely, that on all of the testimony in the Doran case there was nothing that could be laid hold

of to legally support the theory that the daughter was, at the time of the accident, the agent of her father engaged about his business, accords with this. It is, in effect, though not in terms, a statement that if *upon all of the evidence* on which the plaintiff relies, whether given on behalf of the plaintiff or defendant, *liability is not made to appear,* and, of course, where the plaintiff does not make liability appear, upon any consideration of the testimony, contradicted or uncontradicted, a court and not a jury question arises. In the Missell case it was stated that the automobile at the time of the accident was occupied by the father's immediate family and their guests, and that that fact constituted affirmative evidence that the automobile was being used in the father's affairs or business, and it was decided that the question was one of *fact,* and that it was properly submitted to the jury.

In Jennings *v.* Okin the defendant's son was directed by him to take his automobile to a certain locality on a certain errand. The question was whether the relationship of master and servant had not been severed by reason of the son taking two friends in the automobile to another locality. Only one of the alleged trial errors was deemed necessary for consideration by the court. It was an offer of testimony to show that the defendant's son and agent made some statement as to the destination of the car when one of his invitees was about to enter it. The exclusion of this testimony was held to be error upon the ground that it was part of the *res gestæ* and a new trial was granted.

And so I say that none of these cases are authority for the proposition that a trial judge may assume to direct a verdict because uncontradicted testimony given by or on behalf of the defendant establishes his right to prevail; which it does, but only if that testimony is believed, and the question of its belief or disbelief is strictly a jury function.

In *Clark* v. *Public Service Electric Co.,* 86 *N. J. L.* 144, this court said (at *p.* 151) that a trial judge was only justified in directing a verdict upon a court question arising from the *admitted or uncontroverted facts of a case,* citing earlier decisions. I think that confusion has arisen in this case by a

failure to distinguish between *uncontroverted* testimony and *uncontradicted* testimony. It is true that to controvert means to deny, but it also means other things; it means, also, to debate; to dispute or oppose by reasoning, to contest, to oppose. *Webs. New Int. Dict.* 490. While at the conclusion of a case there may be uncontradicted testimony as to a fact or facts, nevertheless, there may be a *controversy* as to the *truth of those facts,* arising out of other facts, or probabilities, or what-not. And in Clark *v.* Public Service Electric Co. it was held that the *jury did not have to believe the testimony of an uncontradicted witness.*

In *Schmidt* v. *Marconi Wireless Telegraph Co.,* 86 *N. J. L.* 183, this court said (at *p.* 185) that it could not agree that a certain fact was so conclusively established as to make it one to be determined by the court rather than the jury. At the trial former Governor John W. Griggs testified for the defendant, and he was uncontradicted. The trial judge held that the proof was conclusively in favor of the defendant and directed a verdict in its favor. Chief Justice Gummere, speaking for this court, said in the opinion (at *p.* 186) that the testimony of a man whose character for truth and integrity is so universally known as that of Governor Griggs would always be accepted as a correct recital of the facts spoken to as he remembered them; but that it would hardly do to say that the character of a witness is the determining factor upon the question whether the facts testified to by him should be determined by the court or the jury; that it could not be that where the character of the witness for truth and veracity was known by the court to be unimpeachable the facts sought to be established by his testimony were to be determined by the court, but that where, in the judgment of the court, the witness is not entitled to full faith and credit, the facts sought to be proved by him must be submitted to the jury; that no such rule of evidence exists; that in every case where the issue depends upon the determination of facts the existence of which is not admitted, the jury and not the court must determine them.

In *Nell* v. *Godstrey,* 90 *N. J. L.* 709, where the trial judge

directed a verdict for the defendant, this court said (at *p.* 712) that the case should have been submitted to the jury, as there was evidence tending to show that the taxicab belonged to the defendant; that the chauffeur was his agent and that he was negligent; that it was claimed on behalf of the defendant that the chauffeur exceeded his authority as an employe; that if he did, if he violated his instructions, his authority and instructions were not known to the plaintiff; that he was apparently the agent of the defendant with authority to drive his taxicab for hire; and the judgment was reversed.

The latest pronouncement of this court on this question was made in the opinion filed on May 3d last, in the case of *Second National Bank* v. *Smith,* 91 *N. J. L.* 531. In that case this court held that the credibility of a witness is always for the jury, and that where the issue depends upon facts, the existence of which is *not admitted,* even though testified to by a credible witness who is unchallenged, the question is for the jury. In that case the plaintiff had a verdict and the defendant appealed. One of the questions (at *p.* 864) was whether a notice of protest of the promissory note sued on was received by the defendant. He testified that he never received it, but said that if he had he would have forwarded it to the Fidelity Trust Company. One of their officers testified that they received it. This court said that it was not shown that it was sent to the trust company by any other person, and that the jury had a right to believe the defendant received and sent it and that he was mistaken in his assertion that it had not come to him, as the credibility of the witness was for the jury, citing *Clark* v. *Public Service Electric Co.* and *Schmidt* v. *Marconi Wireless Telegraph Co., supra.*

That the trial judge dealt with the case as a factual question is apparent from his remarks in granting the motion to direct a verdict. He said that he was convinced that the undisputed facts were susceptible of but one rational interpretation, and that was, that the defendant's chauffeur at the time of the accident was not acting within the scope of his authority. He might have charged the jury to that effect with an assertion that no matter what his opinion was as to what

the facts showed, it was for the jury to place their interpretation upon them and find the facts accordingly. He then said that the chauffeur, at most, was only given the privilege of taking Arader and the lady around the island. I fail to see that under the law he could appropriate to himself the function of determining what, *at most,* was the privilege of the· agent; that, I repeat, was for the jury under proper instructions. He further said that it was not sufficient for the plaintiff to show merely that the defendant owned the automobile and that Brown was his chauffeur; that they were factors, but must be coupled with the fact, or proof of facts and circumstances tending to prove the fact, that the chauffeur was acting within the expressed or implied scope of his authority. There was much more in the case than the mere showing that the defendant owned the automobile and that Brown was his chauffeur. There was testimony that Brown was in the habit of taking out prospective purchasers of land for the defendant, and that Arader was an agent who sometimes brought customers to the defendant. These, and others, were facts which may be said to have tended to prove the fact that the chauffeur was acting within the expressed or implied scope of his authority in going out with Arader and the woman. The trial judge proceeded to say that the chauffeur deliberately violated the express orders of his employer. The person who testified to this—that is, to the violation of orders, was the employer himself, who was the defendant, and it was his testimony that the trial judge laid hold of in deciding as to what were the undisputed facts. He also said that the chauffeur was using the machine in forbidden territory, and, according to the undisputed testimony, was racing on the public highway and was not engaged in his employer's business. If the chauffeur were out on his master's business, the fact that he was racing on the public highway would not excuse the master, as this court has held that where a servant is acting within the scope of his employment, the master is liable, even if the servant's act violates the master's orders. See *Klitch* v. *Betts,* 89 *N. J. L.* 348; *Bittle* v. *Camden and Atlantic Railway Co.,* 55 *Id.* 615.

In my judgment, there was some evidence, though slight, that the chauffeur was about his master's business in taking the party out, and that a jury question was presented as to whether the agent at the time was running contrary to his master's orders, without regard to whether the act was done negligently, or even maliciously, as was said in the Bittle case. I do not say but that on a verdict for the plaintiff the trial judge would have been justified in setting it aside on rule to show cause. With that question we are not concerned. The only question before us is as to whether or not a factual question was presented when the case was rested, which required submission to the jury. I am clearly of opinion that it was, and shall vote to reverse for that reason.

*For affirmance*—THE CHIEF JUSTICE, SWAYZE, PARKER, BERGEN, MINTURN, BLACK, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 10.

*For reversal*—THE CHANCELLOR, TRENCHARD, KALISCH, WHITE, JJ. 4.